

**Legislative Fiscal Bureau**
One East Main, Suite 301 • Madison, WI 53703 • (608) 266-3847 • Fax: (608) 267-6873

May 18, 2011 Joint Committee on Finance Paper #367

## Fees for Patient Health Care Records (DHS -- SSI and Public Health)

[LFB 2011-13 Budget Summary: Page 240, #6]

### CURRENT LAW

As a result of provisions enacted as part of 2009 Wisconsin Act 28, fees that health care providers may charge for copies of patient health care records are established in state statute. In addition, the federal Health Insurance Portability and Accountability Act (HIPAA) specifies who may access or inspect a patient's health care records, and how that access or inspection may be conducted.

Under Wisconsin law, any patient or person authorized by the patient may, upon submitting a statement of informed consent, inspect the health care records of a health care provider pertaining to that patient. The health care provider must make the records available for inspection by the patient or person authorized by the patient during regular business hours, after the health care provider receives notice. A health care provider may not charge a fee for this inspection.

If a patient or a person authorized by the patient requests copies of the patient's health care records, provides informed consent, and pays the applicable fees, the health care provider must provide the patient or person authorized by the patient copies of the requested records. Generally, if a patient or a person authorized by the patient requests a copy of a health care provider's report regarding an X-ray of the patient, provides informed consent, and pays the applicable fees, the health care provider must provide the patient or person authorized by the patient a copy of the report or provide the X-ray to another health care provider of the patient's choice within 30 days after receiving the request.

In most cases, a health care provider may charge no more than the total of all of the following fees for providing copies to a patient or a person authorized by the patient: (a) for paper copies, 35 cents per page; (b) for microfiche or microfilm copies, $1.25 per page; (c) for a print of an X-ray, $10 per image; (d) for providing copies in digital or electronic format, a charge for all copies requested (this charge is not specified); (e) actual shipping costs; (f) if the patient

or person authorized by the patient requests delivery of the copies within seven or fewer days after, and the health care provider delivers the copies in that time, a fee equal to 10 percent of the total of all other fees that may be charged.

For a person who is other than "a person authorized by the patient" and who provides informed consent, the fees are the same as for the patient, with the following additions: (a) for certification of copies, $5; and (b) for processing and handling, a single $15 charge for all copies requested.

If a patient or person authorized by the patient requests copies of the patient's health care records for use in appealing a denial of social security disability insurance (SSDI) or supplemental security income (SSI), the health care provider may charge no more than the amount that the federal Social Security Administration (SSA) reimburses the Department of Health Services (DHS) for copies of patient health care records. If DHS requests copies of a patient's health care records for use in determining eligibility for social security disability insurance, or supplemental security income, the health care provider may charge no more than the amount that the SSA reimburses DHS for copies of patient health care records.

A health care provider may not charge a fee for providing one set of copies of a patient's health care records if the patient is eligible for medical assistance (MA). A health care provider may require proof that the patient is eligible for MA before providing copies without charge. A health care provider may charge any applicable fees for additional copies of patient health care records for an MA-eligible patient. These requirements don't apply if the health care provider is DHS or the Department of Corrections (DOC).

The health care provider must provide the copies in a digital or electronic format, if requested. If the health care provider's record system does not provide for the creation or transmission of records in a digital or electronic format, the provider must provide the person a written explanation for why the copies cannot be provided in that format. The health care provider may include the written explanation with the production of paper copies of the records if the person chooses to receive paper copies.

A patient's health care records must be provided to the patient's health care provider upon request and with a statement of informed consent. The health care provider must provide each patient with a statement paraphrasing the provisions of the statutes related to access to patient health care records, either upon admission to an inpatient health care facility or upon the first provision of services by the health care provider.

**GOVERNOR**

Modify provisions relating to patient health care records to repeal most of the changes relating to health records that were enacted as part of 2009 Act 28. Generally, the provisions in the bill would reinstate statutory provisions relating to health records that existed prior to the enactment of Act 28, and require DHS to set fees for copies of patient health care records by administrative rule.

*Repeal of Current Statutory Fees.* Repeal provisions that establish fees for patient health

care records. Repeal the provision specifying that if DHS requests copies of health care records for determining eligibility for social security disability insurance or supplemental security income, a health care provider cannot charge DHS more than the amount the Social Security Administration reimburses for copies of health care records.

*Determination of Fees in Rule.* Require DHS to set fees for patient health care records that are based on an approximation of actual costs. These fees, plus any applicable tax, would be the maximum amount a health care provider could charge for duplicate health care records, duplicate X-ray reports, or the referral of X-rays to another health care provider of the patient's choice. In determining the approximation of actual costs for the purposes of setting these fees, DHS would be able to consider all of the following factors: (a) operating expenses, such as wages, rent, utilities, and duplication equipment and supplies; (b) the varying cost of retrieval of records, based on the different media on which the records are maintained; (c) the cost of separating requested records from those that are not requested; (d) the cost of duplicating requested records; and (e) the impact on costs of advances in technology.

The bill would also specify that the fees set by DHS apply to statutes related to when patient health care records may be subject to subpoena.

Require DHS to set the fees by emergency rule prior to enactment of permanent rules. Exempt DHS from the statutory requirement to submit evidence that these emergency rules are necessary for the preservation of the public peace, health safety or welfare, and the requirement that DHS provide a finding of an emergency to promulgate this emergency rule.

*Inspection of Records.* Delete the provision that requires a health care provider to make records available for inspection by a patient, or a person authorized by the patient, during regular business hours and without charging a fee, after the health care provider receives notice from the patient or authorized person. Repeal provisions that require a health care provider to do the following: (a) upon request of the person requesting copies, provide the copies in a digital or electronic format unless the record system cannot create or transmit records in a digital or electronic format; and (b) if the copies cannot be provided in an electronic format, provide a written explanation of why the copies cannot be provided in a digital or electronic format.

Instead, permit any patient or person authorized by the patient, upon submitting a statement of informed consent, to do the following: (a) inspect records of a health care provider pertaining to that patient at any time during regular business hours, upon reasonable notice; (b) receive a copy of the records upon payment of fees established by the department; and (c) receive a copy of X-ray reports, or have the X-rays referred to another health care provider of the patient's choice.

*Revision to Fees in Rule.* Require DHS to revise the rules by July 1, 2014, and every three years thereafter, to account for increases or decreases in actual costs.

*Provision of Records to a Patient's Health Care Provider.* Under current law, a patient's health care records must be provided to a patient's health care provider upon request and with a statement of informed consent. The bill would maintain this provision, but specify that the health care provider may be charged reasonable costs for the provision of these records.

*Effective Date.* The requirement that DHS establish fees by rule would take effect on the first day of the fourth month beginning after publication of the enacted bill, and would first apply to requests to inspect or receive copies of records that are made on that effective date.

## DISCUSSION POINTS

1.      Before the enactment of 2009 Act 28 (the 2009-11 biennial budget act), DHS was authorized to set fees for copies of patient health care records in administrative rule (previously in HS 117). If a patient or if the personal representative of the patient requested copies of the patient's health care records, the health care provider could charge no more than the following fees: (a) for records other than X−rays, 31 cents per record page, and the actual costs of postage or other means of delivering the requested duplicate records to the person requesting the records; and (b) for X−rays, a $5.25 fee per X−ray copy, and the actual costs of postage or other means of delivering the requested duplicate records to the person requesting the records. The term "personal representative" is defined under federal law as individuals with the legal authority to make health care decisions on the patient's behalf (such as an individual with health care power of attorney, or the parent of a minor child).

The rule also specified that if a person who was not the personal representative of the patient requested copies of the patient's health care records, a health care provider could charge the requester no more than the following fees: (a) for records other than X−rays, $12.50 per request of up to five pages, $15 per request of five or more pages, a 31 cent per record page fee, and the actual costs of postage or other means of delivering the records; (b) for X−rays, a $5.25 fee per X−ray copy, and the actual costs of postage or other means of delivering the requested duplicate records to the person requesting the records; and (c) an additional $5.00 per request for certifying up to five pages of records, or an additional $7.50 per request for certifying five or more pages of records.

2.      The Department was required to revise the rules to account for increases or decreases in actual costs every three years, beginning in January 1, 2006.

3.      Federal HIPAA regulations set the circumstances under which patient medical records may be accessed with the patient's consent. Under HIPAA, if an individual requests copies of medical records, or agrees to a summary or explanation of such information, the health care provider (referred to as "the covered entity" in federal law) may impose a reasonable, cost-based fee, provided that the fee includes only the cost of the following: (a) copying, including the cost of supplies for and labor of copying, the protected health information requested by the individual; (b) postage, when the individual has requested the copy, or the summary or explanation, be mailed; (c) preparing an explanation or summary of the protected health information, if agreed to by the individual.

4.      In additional clarification under the final HIPAA rule, it was indicated that if the patient requests a copy of protected health information, a covered entity may charge a reasonable, cost-based fee for the copying, including the labor and supply costs of copying. Covered entities may not charge any fees for retrieving or handling the information or for processing the request. If the individual requests the information to be mailed, the fee may include the cost of postage. Fees for copying and postage provided under state law, but not for other costs excluded under this rule, are presumed reasonable.

5.     The provisions of Act 28, after partial vetoes by the Governor, deleted the Department's authority to set fees for medical records through administrative rule, and specified the allowable charges in statute. Act 28 also deleted requirements that these fees be revised every three years to account for increases or decreases in actual costs.

6.     In general, the statutes establish the following maximum allowable fees:

•     For a patient or "a person authorized by the patient," all of the following fees: (a) for paper copies, 35 cents per page; (b) for microfiche or microfilm copies, $1.25 per page; (c) for a print of an X-ray, $10 per image; (d) for providing copies in digital or electronic format, a charge for all copies requested (this charge is not specified); (e) actual shipping costs; (f) if the copies are requested within seven or fewer days after making a request for copies, and the health care provider delivers the copies in that time, a fee equal to 10 percent of the total of all other fees that may be charged.

•     For a person who is other than "a person authorized by the patient" and who provides informed consent, the fees are the same as for the patient, with the following additions: (a) for certification of copies, $5; and (b) for processing and handling, a single $15 charge for all copies requested.

7.     Current law does not define "a person authorized by the patient" for purposes of charging these fees. Again, federal HIPAA law regulates who may access an individual's medical records, and under what circumstances such access is allowed.

8.     The bill would delete the statutory provision that set these fees, and restore statutory provisions that existed prior to Act 28. Any patient or person authorized by the patient, upon submitting a statement of informed consent, would be able to inspect records pertaining to that patient at any time during regular business hours upon reasonable notice, receive a copy of the records upon payment of fees established by the department, and receive a copy of X-ray reports, or have the X-rays referred to another health care provider of the patient's choice.

9.     DHS would set fees for patient health care records that are based on an approximation of actual costs. These fees, plus any applicable tax, would be the maximum amount a health care provider could charge for duplicate health care records. In determining the approximation of actual costs for the purposes of setting these fees, DHS would be able to consider all of the following factors: (a) operating expenses, such as wages, rent, utilities, and duplication equipment and supplies; (b) the varying cost of retrieval of records, based on the different media on which the records are maintained; (c) the cost of separating requested records from those that are not requested; (d) the cost of duplicating requested records; and (e) the impact on costs of advances in technology.

10.     DHS has not yet determined what the fee schedule for copies of medical records would be if the authority to set these fees were returned to administrative rule. The Department indicates that it would likely form an advisory committee on this issue. The effective date of this provision is the first day of the fourth month after publication of the bill, and DHS would have the authority to initially promulgate these fees as an emergency rule.

11.     Act 28 also included several other statutory changes related to fees for patient

health care records. These include the following provisions that would not be affected by the bill: (a) provisions that limit fees to the maximum reimbursement by the Social Security Administration for requests related to appeals under SSDI or SSI; (b) provisions that allow MA recipients to receive one set of copies of medical records without being charged any fees; and (c) exemptions to certain requirements if the health care provider is DHS or DOC.

12.　　An argument could be made that having DHS set fees in administrative rule allows greater flexibility regarding changes in technology (such as improvements in electronic health records), and can facilitate input by stakeholders such as health care providers and patient advocates through the rule-making process. Alternatively, an argument could be made that Legislative control over these fees would be greater if they were set in statute, rather than set by administrative rule. Under the proposal, the relevant standing committees Legislature and the Joint Committee for Review of Administrative Rules would be involved in the review of the permanent rules related to this item (the initial emergency rule promulgated by DHS would be effective for 150 days), but the main authority to set these fees, which are not collected to fund agency programs, would be delegated to the administration.

13.　　Concerns have been raised since the implementation of the changes in Act 28 that the fees, as set in statute, do not reflect the actual costs of complying with requests for medical records. DHS does not track information on the total amount of fees charged for medical records by Wisconsin health care providers, or other information on medical records requests. However, based on limited information received from a Wisconsin firm that provides medical record copying services to health care providers, the average request totals 61 pages in length at an average direct processing cost of $62.22, with the total fee that can be charged for this average request equaling $36.35.

14.　　The fee schedules for copies of patient health care records vary widely among states. It is difficult to compare Wisconsin's fees with fees in other states, since there are several ways states structure their fee schedules. The attachment to this paper describes the fee schedules in Wisconsin and several neighboring states (Illinois, Indiana, Iowa, Michigan and Minnesota).

15.　　DHS pays fees for medical records it requires for making eligibility determinations under the SSDI and SSI programs, and is reimbursed by the federal government for medical record fees associated with SSI eligibility determination conducted by the DHS Disability Determination Bureau. The Governor's budget documents relating to this item do not identify a state fiscal effect of the proposed changes in patient health records fees. Any changes that DHS rules make to the current levels or types of fees that health care providers may charge may affect the cost of these requests. Whether costs would increase or decrease in the future is not known, as is the total effect to the health care system of the changes that were included in Act 28.

16.　　If the Committee determines that DHS should set these fees through administrative rule, and wishes to adopt the other statutory changes included in the bill, it could adopt the Governor's recommendations (Alternative #1). Alternatively, the Committee could maintain the current statutory provisions relating to access to health records, including the statutory fees for these records, by deleting this item from the bill (Alternative #2).

17.　　As previously indicated, states' fee schedules for these records vary significantly, both in terms of the level of fees, and whether the same fees apply to all requests. However, most

states appear to have a single fee schedule for all requesters, rather than separate fee schedules for patients and for other authorized requesters. Under the bill, DHS would be required to set fees for patient health care records that are "based on an approximation of actual costs." The source of the request, whether it is the patient or another requester, would not appear to affect the actual costs of processing a request for copies of medical records.

18.    The Committee could modify the bill to require DHS to propose fees in rule that would apply to all requesters, including patients, patients' authorized representatives, and other requesters (Alternative 3a). This alternative would maintain the current law provision to allow MA recipients to receive a copy of their medical records without charge, and that caps the fees that can be charged for record requests related to appeals under the SSDI and SSI programs.

19.    Finally, the proposed changes in the Governor's bill would require DHS to set fees for patient health care records that are based on an approximation of actual costs. DHS would have the authority to promulgate this rule as an emergency rule. The bill could be modified to require the Department, at the time the agency promulgates an emergency rule under this provision, to submit to the relevant standing committees of the Legislature a report detailing the process DHS used in determining an approximation of actual costs (Alternative 3b). This report would be required to include the following information: (a) a summary of the new fee schedule set under the rule; (b) the sources of information and methodology used to approximate actual costs under the rule; and (c) the individuals or organizations that were consulted during the development of the rule.

**ALTERNATIVES**

1.    Approve the Governor's recommendations.

2.    Delete provision.

3.    Modify the bill by adopting one or both of the following changes.

a.    Prohibit the rules from establishing different fees for different groups of requesters, so that the same fee schedule would apply to all individuals who request patient health care records. However, maintain the current law provision that permits MA recipients to receive a copy of their medical records without charge, and that limits the fees that can be charged for record requests related to appeals under the SSDI and SSI programs.

b.    Require DHS, within seven days of promulgation of an emergency rule under this provision, to submit to the relevant standing committees of the Legislature a report detailing the process by which an approximation of actual costs was determined. Require this report to include the following information: (a) a summary of the new fee schedule set under the rule; (b) the sources of information and methodology used to approximate actual costs under the rule; and (c) the individuals or organizations that were consulted during the development of the rule.

Prepared by:  Sam Austin
Attachment

# ATTACHMENT

## Overview of Medical Records Fees in Selected States

This attachment summarizes the fee schedule for copies of patient health care records in Wisconsin and several neighboring states. The information provided is for fees for copies only, and each state may have additional laws or regulations related to access to patient health care records (for instance, how electronic health records are treated under the law). All requests for patient health care records, regardless of the state, are subject to HIPAA regulations.

### Wisconsin

For a patient or a person authorized by the patient, the following fees apply: (a) for paper copies, 35 cents per page; (b) for microfiche or microfilm copies, $1.25 per page; (c) for a print of an X-ray, $10 per image; (d) for providing copies in digital or electronic format, a charge for all copies requested (this charge is not specified); (e) actual shipping costs; and (f) if the patient or person authorized by the patient requests delivery of the copies within seven or fewer days after, and the health care provider delivers the copies in that time, a fee equal to 10 percent of the total of all other fees that may be charged.

For a person who is other than the patient or a person authorized by the patient, and who provides informed consent, the fees are the same as for the patient, with the following additions: (a) For certification of copies, $5; and (b) For processing and handling, a single $15 charge for all copies requested.

These fees are set in statute, and are not subject to periodic adjustments.

### Illinois

The maximum fees are as follows: (a) a handling charge of $24.81; (b) for pages 1 through 25, $0.93 per page; (b) for pages 26 through 50, $0.62 per page; (c) for pages in excess of 50, $0.31 per page; and (d) for copies made from microfiche or microfilm, $1.55 per page.

Base fees were set in state statute, and have been adjusted for inflation each year, beginning in January 20, 2003.

### Indiana

The maximum fees are as follows: (a) $1.00 per page for the first ten pages; (b) $0.50 per page for pages 11 through 50; (c) $0.25 per page for pages 51 and higher; (d) a labor fee not to exceed $20 (if the provider or medical records company collects a labor fee, no fee for providing copies of the first 10 pages of a medical record may be charged); (e) the provider or medical records company may charge the actual costs of mailing the medical record; and (f) the an additional ten dollars ($10) if the request is for copies to be provided within two working days.

Upon a patient's written request and reasonable notice, a provider shall provide access or copies of X-rays at the provider's actual costs.

An initial fee schedule was set in statute. However, the Indiana Department of Insurance may adopt rules under to adjust the amounts that may be charged for copying records. In adopting rules under this section, the Department is required to consider the following factors: (a) certain labor costs; (b) software costs for logging requests; (c) expense costs for copying; (d) capital costs for copying; (e) billing and bad debt expenses; and (f) space costs. The current fee schedule is set by rules promulgated under this authority.

## Iowa

Generally, requests for patient health care records are subject to the requirements under HIPAA that state if an individual requests copies of medical records, the health care provider may impose a reasonable, cost-based fee, provided that the fee includes only the cost of the following: (a) copying, including the cost of supplies for and labor of copying, the protected health information requested by the individual; (b) postage, when the individual has requested the copy, or the summary or explanation, be mailed; (c) preparing an explanation or summary of the protected health information, if agreed to by the individual.

Under administrative rule, if the request is related to a workers' compensation proceeding, initial and final clinical assessments must be provided without charge when the assessments are requested as supporting documentation to determine liability or payment for medical services. For copies of additional records or reports are requested, the health care provider can charge the actual costs of providing such copies, with the following maximum charges: (a) $20 for requests totaling one to 20 pages; (b) $1.00 per page for pages 20 through 30; (c) $0.50 per page for pages 30 through 100; (d) $0.25 per page for pages 100 through 200; and (e) $0.10 for each additional page over 200.

## Michigan

The maximum fees are as follows: (a) an initial fee of $22.13; (b) $1.10 per page for the first 20 pages; (c) $0.55 per page from for pages 21 through 50; and (d) $0.23 per page for pages 51 or above. A patient may not be charged an initial fee for his or her medical record. The initial fees were set in statute, and are adjusted annually to reflect inflation.

## Minnesota

The maximum charge, for all requesters, is $1.23 per page and $16.24 for time spent retrieving and copying the records. The provider may charge the actual cost of reproducing X-rays. Base fees were set in statute in 1991, and are adjusted annually for inflation.